UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 227 Gibbons Road, Springfield, PA 19064 _____

Address of Defendant: _____ 4200 Fifth Avenue, Pittsburgh, PA 15260 _____

Place of Accident, Incident or Transaction: _____

---

*RELATED CASE, IF ANY:*

Case Number: 2:20-cv-00690-WSS    Judge: William S. Strickman    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☑  No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☑ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 07/29/2020 _____ _____(Must sign here)_____ 49490 _____
                          *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
*(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

☑ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Stuart A. Carpey _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 07/29/2020 _____ _____(Sign here if applicable)_____ 49490 _____
                          *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

Carly Swartz, individually
and on behalf of others similarly situated

v.                                          CIVIL ACTION

University of Pittsburgh                     NO. 2:20-CV-3691

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                            ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                               (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( )

7/29/20              Stuart A. Carpey              Plaintiffs
**Date**             **Attorney-at-law**          **Attorney for**

(610)834-6030        (610)940-1743                Scarpey@carpeylaw.com
**Telephone**        **FAX Number**               **E-Mail Address**

(Civ. 660) 10/02

JS 44   (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| **I. (a)  PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| CARLY SWARTZ, individually *and on behalf of others similarly situated,* | UNIVERSITY OF PITTSBURGH |

| **(b)**  County of Residence of First Listed Plaintiff    Delaware | County of Residence of First Listed Defendant    Allegheny |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)**  Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Stuart A. Carpey of Carpey Law, P.C. (610)834-6030<br>600 W. Germantown Pk., Ste. 400, Plymouth Meeting, PA 19462 | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
       Plaintiff

☐ 3   Federal Question
       *(U.S. Government Not a Party)*

☒ 2   U.S. Government
       Defendant

☒ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Protection Act |
| ☒ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | Exchange |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | | Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
       Proceeding

☐ 2   Removed from
       State Court

☐ 3   Remanded from
       Appellate Court

☐ 4   Reinstated or
       Reopened

☐ 5   Transferred from
       Another District
       *(specify)*

☐ 6   Multidistrict
       Litigation -
       Transfer

☐ 8   Multidistrict
       Litigation -
       Direct File

| **VI.  CAUSE OF ACTION** | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:<br>28 U.S.C. 1332(d)<br>Brief description of cause:<br>Class Action: Breach of Contract and Unjust Enrichment |
|---|---|

| **VII.  REQUESTED IN COMPLAINT:** | ☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | **DEMAND $**<br>$5,000,000+ | CHECK YES only if demanded in complaint:<br>**JURY DEMAND:**   ☒ Yes   ☐ No |
|---|---|---|---|

| **VIII.  RELATED CASE(S) IF ANY** | *(See instructions):* | | |
|---|---|---|---|
| | JUDGE   William S. Stickman | DOCKET NUMBER   2:20-cv-00690-WSS | |

DATE

SIGNATURE OF ATTORNEY OF RECORD
of Stuart A. Carpey

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLY SWARTZ, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:20-cv-03691 |
| v. | ) ) ) | **CLASS ACTION COMPLAINT (JURY TRIAL DEMANDED)** |
| UNIVERSITY OF PITTSBURGH, | ) ) | |
| Defendant. | ) ) ) | |

Plaintiff, Carly Swartz ("Plaintiff"), by and through undersigned counsel, brings this action against University of Pittsburgh ("Defendant" or "University") on behalf of herself and others similarly situated, and makes the following allegations based upon attorney investigation, information and belief, and upon Plaintiff's own knowledge:

### PRELIMINARY STATEMENT

1.    Plaintiff brings this case as a result of Defendant's decision not to issue appropriate refunds for the Spring 2020 semester after canceling in-person classes and changing all classes to an online/remote format, closing most campus buildings, and requiring all students who could leave campus to leave as a result of the Novel Coronavirus Disease ("COVID-19").

2.    This decision deprived Plaintiff and other members of the Classes from recognizing the benefits of on-campus enrollment, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid fees and tuition.

3.    Defendant has either refused to provide reimbursement for the tuition, fees, and other costs that Defendant failed to provide during the Spring 2020 semester, or has provided inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiff and members of the Classes for their losses.

4.    This action seeks refunds of the amount Plaintiff and other members of the Classes are owed on a *pro-rata* basis, together with other damages as pled herein.

**PARTIES**

5.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

6.    University of Pittsburgh is an institution of higher learning located in Pittsburgh, Pennsylvania.

7.    Upon information and belief, Defendant has an estimated endowment of approximately $4.31 billion and more than 34,000 enrolled students during the 2019-2020 academic year.

8.    Moreover, upon information and belief, Defendant was allocated more than $21.26 million of federal stimulus under the CARES Act. The CARES Act directs that institutions must use at least half of the funds they receive to provide emergency financial aid grants to students for expenses related to the disruption of campus operations due to COVID-19.

9.    Plaintiff is an individual and a resident and citizen of Springfield, Pennsylvania, and was a student enrolled at University of Pittsburgh during the Spring 2020 term.

**JURISDICTION AND VENUE**

10.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

11.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

12.     This Court has personal jurisdiction over Defendant because Defendant conducts business in Pennsylvania and has sufficient minimum contacts with Pennsylvania.

13.     Venue is proper in this District under 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**BACKGROUND FACTS**

14.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

15.     Plaintiff was enrolled as a full-time student for the Spring 2020 academic semester at Defendant's institution.

16.     As a precondition for enrollment, Plaintiff was required to and did pay substantial tuition for the Spring 2020 semester either out of pocket or by utilizing student loan financing, as did all members of the putative Tuition Class (defined below).

17.     There are hundreds, if not thousands, of institutions of higher learning in this country.

18.     Some institutions of higher learning provide curriculum and instruction that is offered on a remote basis through online programming which does not provide for physical attendance by the students.

19.     Defendant's institution offers both in-person, hands-on programs, and fully online distance-learning programs, which it markets as separate and distinct products.

20.     Plaintiff and members of the proposed Tuition Class (defined below) did not choose to attend another institution of higher learning, or to seek an online degree, but instead chose to attend Defendant's institution and specifically chose the on-campus program and enrolling on that basis.

21.     Defendant has recognized and admitted the inherent different between its in-person and online products, and markets them separately throughout its website and other publications and circulars, including academic catalogs.

22.     Accordingly, when students pay tuition in exchange for enrollment in the on-campus program, such students expect to receive, and Defendant has promised to provide, benefits and services above and beyond basic academic instruction, which include but are not limited to:

- Face-to-face interaction with professors, mentors and peers;
- Access to facilities such as computer labs, study rooms, laboratories, libraries, etc.;
- Student governance and student unions;
- Extra-curricular activities, groups, intramurals, etc.;
- Student art, cultures, and other activities;
- Exposure to community members of diverse backgrounds, cultures, and schools of thought;
- Social development and independence;
- Hands-on learning and experimentation; and
- Networking and mentorship opportunities.

23.     Plaintiff's education was changed from in-person, hands-on learning to online instruction during the Spring 2020 term.

24.     When this happened, Plaintiff was forced from campus and deprived of the benefit of the bargain for which she had paid, and in exchange for which Defendant had accepted, tuition as set forth more fully above.

25.     In addition to tuition, Defendant charges certain mandatory fees, including but not limited to a:

- Student Activity Fee

- Wellness Fee

- Student Health Fees

- Computing and Networks Services Fee

- Security, Safety, and Transportation Fee

26.     The Student Activity Fee is assessed at each of the University's campuses. The fee amount is separately established at each campus.[1]

27.     The Wellness Fee formerly the "Student Health Fee," is mandatory for all full-time and part-time students at the Pittsburgh Campus.[2]

28.     The Student Health Fees are mandatory for students enrolled at Regional Campuses. The fee amount is separately established at each campus.[3]

29.     The Computing and Network Service Fee is mandatory each term for all full-time and part-time students. The fee applies to students enrolled at any campus; the fee amount is the same at each campus.[4]

30.     The Security, Safety, and Transportation Fee is mandatory each term for all full-time and part-time Pittsburgh campus students.[5]

31.     Plaintiff was required to and did pay all mandatory fees associated with her Spring 2020 enrollment at the Pittsburgh Campus.

---

[1] Tuition & Mandatory Fees, https://payments.pitt.edu/tuition-rates-fees/.

[2] Id.

[3] Id.

[4] Id.

[5] Id.

32.     The University states that the Student Activity Fee for undergraduate and graduate students are collected from all full-time and part-time students each academic term.[6]

33.     The University states that the Wellness Fee provides access to Student Health Services, a campus facility staffed by medical doctors, psychiatrists, nurses, and nurse practitioners. The fee also provides access to the University's Counseling Center. This facility is staffed by psychologists, counselors, social workers, and other mental health care professionals. The fee also supports a variety of health education and promotion programming, including a Pitt-specific program called "Healthy U" that provides students with many opportunities and resources to help them maintain optimal mental, physical, and emotional health. The fee provides access to Campus Recreation facilities, including the Baierl Student Recreation Center, Pitt Sports Dome, Trees Hall, and Bellefield Hall, among others. Finally, the fee also supports intramural club sports programs, as well as recreation and fitness programs, services, and activities.[7]

34.     The University states Student Health Fees gives students access to Student Health Services, a campus facility staffed by medical doctors, nurses, nurse practitioners, pharmacists, or other health care professionals.[8]

35.     The University states Computing and Network Services Fee is used for upgrading and maintaining the University's computer systems, equipment, and facilities.[9]

36.     The University states Security, Safety, and Transportation Fee provides funding for campus transportation services including shuttles, expanded handicapped/disabled transport services, a night on-call van service, an on-call escort service, and security lighting.[10]

---

[6] Tuition & Mandatory Fees, https://payments.pitt.edu/tuition-rates-fees/.
[7] Id.
[8] Id.
[9] Id.
[10] Id.

37.     As a result of the actions and announcements of Defendant during the Spring 2020 term, Plaintiff and members of the Fees Class (defined below) no longer had the benefit of the services for which these fees were paid. For example, University's Counseling Center and Baierl Student Recreation Center were closed, student events and activities were cancelled, student organizations were no longer operational, and students who moved home no longer had the need for or access to the various health facilities.

38.     At Defendant's request and direction, Plaintiff and members of the Classes lost access to any campus facilities and services thereon throughout the remainder of the Spring 2020 term.

## FACTUAL ALLEGATIONS

39.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

40.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 6, 2020.[11]

41.     Upon information and belief, Defendant's Spring term was scheduled to conclude with the last day of examinations on or about April 25, 2020 and commencement ceremonies on April 26, 2020.[12]

42.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 110 days.

---

[11] Academic Calendar, 2019-2020,
https://www.registrar.pitt.edu/sites/default/files/pdf/Academic%20Calendar%202019-2020_Apple.pdf.
[12] Id.

43.     However, as a result of the COVID-19 pandemic, Defendant announced on March 11, 2020 that it would begin delivering classes via electronic channels on Monday, March 23, 2020.[13]

44.     On March 11, 2020, Defendant also announced that students would be required not to return to campus from their spring break if they could do so.[14]

45.     On March 18, 2020, Defendant announced "the closure of many on-campus academic support facilities" including, but not limited to, libraries, recreational facilities, computer labs, and study areas and group spaces.[15]

46.     Almost immediately students demanding refunds for the fees and charges demanded in this action.

47.     Based on the dates set forth above, upon information and belief, Defendant's move to online classes and construction eviction of students on March 11, 2020 deprived Plaintiff and other members of the Classes from access to campus facilities and in-person instruction for approximately 40% of the semester for which they had contracted.

48.     Although Defendant continued to offer some level of academic instruction via online classes, Plaintiff and members of the proposed Tuition Class were deprived of the benefits of on-campus enrollment for which they paid as set forth more fully above.

49.     These realities notwithstanding, Defendant has refused and continues to refuse to offer any refund whatsoever with respect to the tuition that has already been paid.

---

[13] Email from Patrick Gallagher, chancellor@chancellor.pitt.edu, Chancellor, University of Pittsburgh, to Members of the University Community (Mar. 11, 2020, 03:11:08 PM EST).
[14] Id.
[15] Email from Patrick Gallagher, chancellor@chancellor.pitt.edu, Chancellor, University of Pittsburgh, to Members of the University Community (Mar. 18, 2020, 04:14:20 PM EST).

50.     Likewise, Plaintiff and members of the proposed Fees Class were deprived of utilizing services for which they have already paid, such as access to campus facilities, student activities, health services and other opportunities.

51.     Defendant has failed and continues to fail to offer any type of pro-rated refund on fees.

## CLASS ACTION ALLEGATIONS

52.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

53.     Plaintiff brings this action on behalf of herself and as a class action, pursuant to the provision of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

> **The Tuition Class:**
>
> All people who paid tuition for or on behalf of students enrolled in classes at University for the Spring 2020 semester but were denied live, in-person instruction and forced to use online distance learning platforms for the latter potion of that semester.
>
> **The Fees Class:**
>
> All people who paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester.

54.     Excluded from the Classes is University of Pittsburgh, and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and court staff assigned to this case. Plaintiff reserves the right to modify or amend the Class definitions as appropriate during the course of this litigation.

55.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

56.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rules of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

57.     The members of the Classes are so numerous and geographically dispersed that individual joinder of all members of the Classes is impracticable. Plaintiff is informed and believes that there are thousands of members of the Classes, the precise number being unknown to Plaintiff, but such number being ascertainable from Defendant's records. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved noticed dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

58.     This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes, including, without limitation:

- Whether Defendant engaged in the conduct alleged herein;
- Whether there is a difference in value between enrollment in an online distance learning program and enrollment in a live, on-campus instructional program;
- Whether Defendant breached its contracts with Plaintiff and other members of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and on-campus, in-person enrollment;

- Whether Defendant was unjustly enriched by retaining tuition payments of Plaintiff and the Tuition Class representing the difference between the value of online distance learning and on-campus, in-person enrollment;

- Whether Defendant breached its contracts with Plaintiff and the other members of the Fees Class by retaining fees without providing the services, benefits and/or programs the fees were intended to cover;

- Whether Defendant was unjustly enriched by retaining fees of Plaintiff and the other members of the Fees Class without provided the services, benefits and/or programs the fees were intended to cover;

- Whether certification of any or all of the Classes proposed herein is appropriate under Fed. R. Civ. P. 23;

- Whether members of the Classes are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

- The amount and nature of relief to be awarded to Plaintiff and the members of the Classes.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

59.     Plaintiff's claims are typical of the claims of other members of the Classes because, among other things, all members of the Classes were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

60.     Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of other members of the Classes she seeks to represent. Plaintiff has retained counsel competent and experienced in complex litigation and Plaintiff intends to prosecute the action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

61.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct.

62.     Even if members of the Classes could afford individual litigation, the Court system likely could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finally of the litigation.

**Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)**

63.     To the extent that any described Class does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

64.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to members of the Classes as a whole.

## FOR A FIRST COLLECTIVE CAUSE OF ACTION
## BREACH OF CONTRACT

### (Plaintiff and Other Members of the Tuition Class)

65.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

66.     Plaintiff brings this count on behalf of herself and other members of the Tuition Class.

67.     Plaintiff and the other members of the Tuition Class entered into contracts with Defendant which provided that Plaintiff and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, Defendant would enroll such students and admit them to campus; granting them the full rights and privileges of student status, including but not limited to access to campus facilities, access to campus activities, and live, in-person instruction in a physical classroom.

68.     The rights and privileges of students at University are set forth by Defendant through its website academic catalogs, student handbooks, marketing materials and other circulars, bulletins, and publications.

69.     The rights and privileges for the basis of the bargain on which prospective students

agree to accept Defendant's offer of enrollment in exchange for the payment of tuition and fees.

70.     One such right is the ability to be physically present on campus, and fully enjoy the

facilities, services and opportunities provided thereon.

71.     As can be seen from University's Registrar page, when accepted students enroll in

a class, they specifically elect the course offered by Defendant, which includes the day, the time,

the specific classroom, and the campus.[16]



72.     Defendant does not deny that the physical locations of its campus are a main benefit

of enrollment that attracts many students to the University. See ¶ 81.

_____

[16] https://www.registrar.;itt.edu/sites/default/files/pdf/Requisite%20Instructions%20-%20Detailed.pdf.

73.     Defendant's website and recruitment brochures are the primary means through which Defendant targets prospective new students and attempts to influence such students to apply for enrollment at its University as opposed to other institutions of higher learning.

74.     Through these publications, Defendant markets to and enrolls students in two separate and distinct products.

75.     Defendant specifically markets certain classes and degree programs as being offered on a fully-online basis.

76.     Indeed, Defendant dedicates an entire section of its website to these programs, which can be accessed at https://www.cgs.pitt.edu/online-courses.

77.     Conversely, Defendant's publications with respect to non-online classes are full of references to the on-campus experience, including numerous references to student activities; campus amenities; class size and student/teacher ratios; campus diversity, campus location, and the like.

78.     When visitors enter the admissions home page on Defendant's main website (https://admissions.pitt.edu) they are greeted with a nearly full screen promotional video with the large caption: "It all comes together here."

79.     Further down this home page, prospective students find, "At the University of Pittsburgh, whether you're diving in for the first time, joining us from another country, seeking a world-renowned graduate program, or transferring in to find *your place*, you'll discover a community at Pitt that is changing the world."[17]

---

[17] University of Pittsburgh, Admissions: Explore Your Interests and Find Your Fit at Pitt, https://admissions.pitt.edu/.

80.     Further down this page, prospective students find a section from Defendant titled "Living in Pittsburgh."[18]

81.     In this section, Defendant states: "Pittsburgh is an extraordinary American city in so many respects. The striking geography of bridges and rivers. The nationally recognized cultural scene. The pride that comes with cheering for three major league sports teams: the Penguins, Pirates, and Steelers. And the rich tapestry of 90 distinctive neighborhoods-including Pitt's own, Oakland-that give Pittsburgh its genuineness and warmth."[19]

82.     Additionally, on this page, prospective students find a section titled "College Life."[20]

83.     In this section, Defendant promises prospective students: "Members of the Pitt community will help acclimate you to college living, orient you to our campus and city, and introduce you to people you'll work with and learn from. Pittsburgh may be a major city, but our campus is not right downtown and is quite compact so it's easy to get around and get involved. There's always something happening in the city or *on campus*."[21]

84.     Prospective students are then guided to the "Life at Pitt" page on which Defendant explicitly states: "You're going to love it here!"[22]

85.     In this section of the University's website, Defendant emphasizes again, "Members of the campus community will help acclimate you to college living, orient you to our campus and city, and introduce you to the people you'll work with and learn from."[23]

---

[18] University of Pittsburgh, Admissions: Living in Pittsburgh, https://admissions.pitt.edu/.
[19] Id.
[20] University of Pittsburgh, Admissions: College Life, https://admissions.pitt.edu/.
[21] Id.
[22] University of Pittsburgh, Admissions: Culture, https://admissions.pitt.edu/culture/.
[23] Id.

86.     Further down this page, Defendant states: "Learning at Pitt takes place both in and out of the classroom and our organizations serve as the center of student involvement and engagement. We can't wait to have you on campus!"[24]

87.     Further, Defendant distinguishes between the on-campus, in-person education product and the online, distance learning product, in a section labeled: "Outside of the Classroom Curriculum."[25]

88.     This "Outside the Classroom Curriculum creates a guided journey with the goal of educating the whole person through a series of programs, activities, and experiences that complement [prospective student's] academic studies."[26]

89.     Upon information and belief, there were no references or disclaimers in any of Defendant's websites, circulars, bulletins, publications, brochures, or other advertisements prior to January 17, 2020, that even referenced the possibility of in-person classes being changed to fully online classes at Defendant's discretion or for any other reason whatsoever after the start of a given term.[27]

90.     In fact, it is clear that, prior to the COVID-19 interruption, Defendant had no plans whatsoever to offer its in-person classes via an online delivery model. This is evident from the fact that the University had to postpone education until March 23, 2020 while its professors hurriedly and ineffectively scrambled to make the switch.[28]

---

[24] University of Pittsburgh, Admissions: Culture, https://admissions.pitt.edu/culture/.
[25] Id.
[26] Id.
[27] Academic Calendar, 2019-2020,
https://www.registrar.pitt.edu/sites/default/files/pdf/Academic%20Calendar%202019-2020_Apple.pdf.
[28] Email from Patrick Gallagher, chancellor@chancellor.pitt.edu, Chancellor, University of Pittsburgh, to Members of the University Community (Mar. 11, 2020, 03:11:08 PM EST).

91.     Those prospective students who are interested in enrolling at the University after consuming the marketing materials described above are invited to complete applications, and some are selected for and offered admission.

92.     When a student is offered admission to the University, the student receives a number of further communications and has a number of additional interactions with Defendant.

93.     Admitted students were invited to attend "Admitted Student Day," and this section of the University's website is now taken down.[29]

94.     The Defendant offered to provide, and members of the Tuition Class expected to receive, instruction on the physical campus is further evidence by the parties' prior course of conduct.

95.     Those classes for which students expected to receive in-person instruction began the semester by offering in-person instruction.

96.     Each day for the weeks and months leading up to March 11, 2020, students attended physical classrooms to receive in-person instruction.

97.     Likewise, upon information and belief, most students were provided with syllabi and other documents that referenced class meeting schedules, locations, and physical attendance requirements.

98.     Each day for the weeks and months prior to announced closures, students had access to the full campus.

99.     Accordingly, it is clear that Defendant offered to provide live, in-person education, together with a full on-campus experience and that members of the Tuition class accepted that offer by paying tuition and attending classes during the beginning of the Spring 2020 semester.

---

[29] https://admissions.pitt.edu/on-campus-visits/admiitted-student-day/.

100.   Based on this mutual assent, Plaintiff and other members of the Tuition Class fulfilled their end of the bargain when they paid tuition for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

101.   However, the University breached the contract with Plaintiff and the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms, and restricting the on-campus experience without reducing or refunding tuition accordingly.

102.   This cause of action does not seek to allege "academic malpractice."

103.   Rather, it is clear from the facts and circumstances that Defendant offered two separate and distinct products, one be live, in-person, on-campus education, with its ancillary and related services and the other being online distance education.

104.   Plaintiff and members of the Tuition Class accepted Defendant's offer for live, in-person, on-campus education and paid valuable consideration in exchange.

105.   However, after accepted such consideration from Plaintiff and the Tuition Class, Defendant provided an entirely different product, which deprived Plaintiff and the Tuition Class of the benefit of the bargain for which they had already paid.

106.   Defendant retained tuition monies paid by Plaintiff and other members of the Tuition Class, without providing them the full benefit of their bargain.

107.   Plaintiff and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendant's breach amounting to the difference in the fair market value of the services and access for which they contracted and the services and access which they actually received.

108.   As a direct and proximate result of Defendant's breach, Plaintiff and the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action,

to include disgorgement of the difference between the fair market value of the online learning provided versus the fair market value of the live, in-person instruction in a physical classroom on a physical campus for which they contracted.

## FOR A SECOND COLLECTIVE CAUSE OF ACTION
## UNJUST ENRICHMENT

### (Plaintiff and Other Members of the Tuition Class)

109.    Plaintiff incorporates by reference all preceding allegation as though fully set forth herein.

110.    Plaintiff brings this count on behalf of herself and other members of the Tuition Class.

111.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the First Cause of Action above.

112.    Plaintiff and other members of the Tuition class paid substantial tuition for live, in-person instruction in physical classrooms on a physical campus.

113.    Plaintiff and other members of the Tuition Class conferred a benefit on Defendant when they paid this tuition.

114.    Defendant has realized this benefit by accepting such payment.

115.    However, Plaintiff and members of the Tuition Class did not receive the full benefit of their bargain.

116.    Instead, Plaintiff and members of the Tuition Class conferred this benefit on Defendant in expectation of receiving one product, i.e. live, in-person, instruction in a physical classroom along with on-campus experience of campus life as described more fully above, but

they were provided with a completely difference product carrying a different fair market value, i.e., online instruction devoid of the on-campus experience, access, and services.

117.   Defendant has retained this benefit, even though Defendant has failed to provide the services for which the tuition was collected, making Defendant's retention unjust under the circumstances.

118.   It is significantly cheaper for Defendant to provide the online product than the on-campus product.

119.   As a result of closing campus and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

120.   Simply put, it is significantly cheaper to operate a remote, on-line campus than a fully open physical campus. But even if it was not, it is not the product the students contracted for, and not the product that they bought.

121.   Equity and good conscience require that the University return a portion of the monies paid in tuition to Plaintiff and other members of the Tuition Class.

122.   This cause of action does not seek to allege "academic malpractice."

123.   Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

## FOR A THIRD COLLECTIVE CAUSE OF ACTION
## BREACH OF CONTRACT

### (Plaintiff and Other Members of the Fees Class)

124.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

125.    Plaintiff brings this count on behalf of herself and other members of the Fees Class.

126.    In addition to tuition, Defendant charges a number of mandatory fees.

127.    In its publications and, particularly on its website, Defendant specifically describes the nature and purpose of each fee.

128.    Some fees apply broadly to all or certain groups of students, while other fees are program or course based.

129.    Such fees are set forth not only in amount but also in description and purpose through the various academic catalogs and on the website.

130.    As such, it is axiomatic that the monies Plaintiff and other members of the Fees Class paid toward these fees were intended by both the students and Defendant to cover the services for which the fees were described and billed.

131.    The Wellness Fee is specifically stated to "provide access to Student Health Services, a campus facility staffed by medical doctors, psychiatrists, nurses, and nurse practitioners. The fee also provides access to the University's Counseling Center. This facility is staffed by psychologists, counselors, social workers, and other mental health care professionals. The fee also supports a variety of health education and promotion programming, including a Pitt-specific program called "Healthy U" that provides students with many opportunities and resources to help them maintain optimal mental, physical, and emotional health. The fee provides access to Campus Recreation facilities, including the Baierl Student Recreation Center, Pitt Sports Dome,

Trees Hall, and Bellefield Hall, among others. Finally, the fee also supports intramural club sports programs, as well as recreation and fitness programs, services, and activities."[30]

132.    The Student Health Fees are specifically stated to "give students access to Student Health Services, a campus facility staffed by medical doctors, nurses, nurse practitioners, pharmacists, or other health care professionals."[31]

133.    The Computing and Network Services Fee is specifically stated to be "used for upgrading and maintaining the University's computer systems, equipment, and facilities."[32]

134.    The Security, Safety, and Transportation Fee are specifically stated to "provide funding for campus transportation services including shuttles, expanded handicapped/disabled transport services, a night on-call van service, an on-call escort service, and security lighting."[33]

135.    As such, in accepted these terms and paying these fees, a contract was formed between Plaintiff, including the Fees Class, and Defendant, which provided that Plaintiff and other members of the Fees Class would pay these fees for or on behalf of themselves and, in exchange, Defendant would provide or make available the services, benefits and/or programs related to those fees, as promised.

136.    It is undisputed that Defendant did not provide use of athletic facilities, the counseling center, health services, student organization activities, on-campus printing facilities, campus computer systems, shuttles, and on-call escort service.

---

[30] Tuition & Mandatory Fees, https://payments.pitt.edu/tuition-rates-fees/.
[31] Id.
[32] Id.
[33] Id.

137.    Plaintiff and other members of the Fees Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

138.    However, Defendant breached the contract with Plaintiff and the Fees Class by moving all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, closing most campus buildings and facilities, and cancelling most student activities.

139.    By retaining fees paid by Plaintiff and other members of the Fees Class, without providing them the full benefit of their bargain, Defendant has not performed its contractual obligations.

140.    Plaintiff and other members of the Fees Class have suffered damage as a direct and proximate result of Defendant's breach, namely being deprived of the value of the benefits services and/or programs the fees were intended to cover.

141.    As a direct and proximate result of Defendant's breach, Plaintiff and the Fees Class are legally and equitably entitled to damages, to be decided by a trier of fact in this action, to include disgorgement of the *pro-rate* amount of fees that were collected but for which services were not provided.

## FOR A FOURTH COLLECTIVE CAUSE OF ACTION
## UNJUST ENRICHMENT

### (Plaintiff and Other Members of the Fees Class)

142.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

143.    Plaintiff brings this count on behalf of herself and other members of the Fees Class.

144.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the Third Cause of Action above.

145.    Defendant has received a benefit at the expense of Plaintiff and other members of the Fees Class to which it is not entitled.

146.    Plaintiff and other members of the Fees Class paid substantial student fees for on-campus benefits, access and services and did not receive the full benefit of the bargain.

147.    Plaintiff and other members of the Fees Class conferred this benefit on Defendant when they paid the fees.

148.    Defendant realized this benefit by accepting such payment.

149.    Defendant has retained this benefit, even though Defendant has failed to provide the services, benefits and/or programs for which the fees were collected, making Defendant's retention unjust under the circumstances.

150.    It is significantly cheaper for Defendant to provide the online product than the on-campus product.

151.    As a result of closing campus and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

152.    Simply put, it is significantly cheaper to operate a remote, on-line campus than a fully open physical campus.

153.    Equity and good conscience require that Defendant return a *pro-rata* portion of the monies paid in fees to Plaintiff and other members of the Fees Class.

154.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of members of the Classes, prays for judgment in their favor and against Defendant as follows:

A.    Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B.    Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this action;

C.    Declaring that Defendant has wrongfully kept monies paid for in tuition and fees;

D.    Requiring Defendant disgorge amounts wrongfully obtained for tuition and fees;

E.    Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid for in tuition and fees;

F.    Scheduling a trial by jury in this action;

G.    Awarding Plaintiff's reasonable attorney's fees, costs and expenses, as permitted by law;

H.    Awarding pre and post-judgment interest on any amounts awarded, as permitted by law; and

I.    Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

**[signature block on following page]**

Dated: July 29, 2020

**CARPEY LAW, P.C.**

By: _____ /s/ Stuart A. Carpey _____
Stuart A. Carpey, Esq.
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
Tel: (610) 834-6030
Email: scarpey@carpeylaw.com

-and-

**ANASTOPOULO LAW FIRM, LLC**

By: /s/ _____

  Eric M. Poulin, Esq. *
  Roy T. Willey, IV, Esq. *
  32 Ann Street
  Charleston, SC 29403
  Tel: (843) 614-8888
  Email: eric@akimlawfirm.com
      roy@akimlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

* *Pro hac vice motion forthcoming*